IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| CIBC INC., et al., | |
| Plaintiffs, | Civ. No. 14-5047 (NLH/JS) |
| v. | **OPINION** |
| GRANDE VILLAGE LLC, et al., | |
| Defendants. | |

<u>Appearances:</u>

DAVID L. BRAVERMAN
BENJAMIN ALEX GARBER
PETER J. LEYH
BRAVERMAN KASKEY, P.C.
ONE LIBERTY PLACE, 56TH FLOOR
1650 MARKET STREET
PHILADELPHIA, PA 19103
*Attorneys for plaintiffs*

ADAM K. DERMAN
DAVID M. DUGAN
WOLFF & SAMSON, P.C.
THE OFFICES OF CRYSTAL LAKE
ONE BOLAND DRIVE
WEST ORANGE, NJ 07052
*Attorneys for defendants*

**HILLMAN**, District Judge

This is a breach of contract case involving various loan

and mortgage documents secured for a retail space in New Jersey.

Plaintiffs filed a motion to dismiss Defendants' counterclaims.

1

For the reasons explained below, Plaintiffs' motion will be granted in part and denied in part.

## I.  <u>FACTUAL BACKGROUND</u>

Between September 2007 and November 2008, plaintiff CIBC extended three credit facilities to Grande Village LLC, Grande Properties, LLC, Willingboro Town Center Urban Renewal North, LLC, and Willingboro Town Center North Manager, LLC (the "Borrowers") totaling $46.8 million.  On or about July 20, 2011, the Borrowers, William T. Juliano, and Thomas E. Juliano (collectively, "Defendants") entered into five new agreements with CIBC: a mortgage modification and cross-collateralization agreement, three separate loan modification agreements, and a Loan Sale Agreement.

Pursuant to the loan modification agreements, the maturity date for each loan was extended to May 10, 2013. Defendants could further extend the maturity dates on the loans by one year increments provided that they satisfied a variety of conditions. The most relevant conditions for maturity date extensions were that William and Thomas Juliano (the "Juliano Parties"), as guarantors of the loans, maintain a net worth of $15 million and provide periodic financial information to CIBC.  Before the May

2

10, 2013 maturity date, CIBC permitted Defendants to further extend the maturity dates on the loans to May 10, 2014.

Under the Loan Sale Agreement, the Juliano Parties were given priority bidding rights on the loans.  Specifically, if CIBC is considering the sale of the loans it must give the Juliano Parties a Potential Loan Sale Notice.  If the Juliano Parties submit a "Juliano bid" within 30 days which meets certain requirements, CIBC is not permitted the sell the loans to a third party for less than their offer.  The Loan Sale Agreement also provides that if a Juliano bid is not submitted within 30 days following the Potential Loan Sale Notice or the bid does not comply with the bid requirements, the agreement is void.

On March 3, 2014, CIBC issued letters to Defendants notifying them that the loans were in default as a result of the failure of William and Thomas Juliano to maintain a minimum net worth of $15 million.  On April 9, 2014, Defendants responded by stating that they would seek to extend the May 10, 2014 maturity date to May 10, 2015.  On April 17, 2014, CIBC responded that Defendants had not met the requirements for a further extension as a result of failing to cure their technical defaults.

3

Defendants maintain that CIBC's declarations of technical default were in error because, as of March 3, 2014, Defendants had provided the financial information requested by CIBC and maintained the minimum net worth required.

On April 28, 2014, Defendants sued CIBC for breach of contract.  That action was removed to this Court on or about June 2, 2014 in a related action.[1]  On August 12, 2014, CIBC commenced this action to recover the amounts due on the loans.

On or about September 15, 2014, pursuant to the Loan Sale Agreement, CIBC sent Defendants the Potential Loan Sale Notice, inviting them to submit a Juliano bid within 30 days.  On October 6, 2014, Defendants filed an emergency application to enjoin CIBC from selling the loans in the related action.  This Court denied Defendants' application.  See Grande Village LLC v. CIBC, Inc., No. 14-3495 [Doc. No. 23].

On November 4, 2015, 50 days following submission of the Potential Loan Sale Notice, CIBC informed Defendants that as a result of their failure to submit a Juliano Bid within 30 days following the Potential Loan Sale Notice, the Loan Sale Agreement was null and void.  Defendants contend that they were

---

[1] See Grande Village LLC v. CIBC, Inc., No. 14-3495 (NLH/JS).

4

unable to exercise their priority bidding rights to due to CIBC's breaches and lawsuit.  On November 28, 2014, Defendants filed the instant counterclaims.

## II.  **JURISDICTION**

This case was removed to federal court on grounds of diversity.  Plaintiff CIBC is a corporation organized and existing under the laws of Delaware, and has its principal place of business in New York, New York.  Plaintiff Canadian Imperial Bank of Commerce is a branch office of Canadian Imperial Bank of Commerce, a banking corporation organized under the laws of Canada with its principal place of business in Toronto, Ontario, Canada.  Defendants Grande Village LLC, Grande Properties, LLC, Willingboro Town Center Urban Renewal North, LLC, and Willingboro Town Center North Manager, LLC are limited liability companies organized and existing under the laws of the State of New Jersey.  The sole members of each of the LLCs are defendant William T. Juliano, who is a citizen of the State of Florida, and defendant Thomas E. Juliano, who is a citizen of the State of New Jersey.

There is complete diversity between the Plaintiffs and Defendants and, therefore, this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

### III. STANDARD FOR MOTION TO DISMISS

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the claim as true and view them in the light most favorable to the claimant. Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005); MCI Telecommunications Corp. v. Graphnet, Inc., 881 F. Supp. 126, 128 (D.N.J. 1995). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

6

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has outlined a three-part analysis in reviewing a complaint under Rule 12(b)(6). First, the Court must take note of the elements needed for plaintiff to state a claim. Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010). Second, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Id.; Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950). Third, a district court must then determine whether the facts alleged in the

7

complaint are sufficient to show that the plaintiff has a plausible claim for relief.  Id.  A complaint must do more than allege the plaintiff's entitlement to relief.  Fowler, 578 F.3d at 210; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element") (internal quotations and citations omitted).  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider,

8

however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

## IV.  DISCUSSION

Plaintiffs move to dismiss Defendants' counterclaims on the grounds that: (1) the New Jersey Consumer Fraud Act does not apply; (2) Defendants fail to state a claim for breach of contract; and (3) Defendants fail to state a claim for breach of the implied covenant of good faith and fair dealing.

### A. New Jersey Consumer Fraud Act

The New Jersey Consumer Fraud Act ("CFA") provides a cause of action to "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act ... [.]"  N.J. Stat. Ann. § 56:8-19. To state a cause of action under the CFA, a plaintiff must allege: "(1) an unlawful practice by the defendants; (2) an ascertainable loss by plaintiff; and (3) a causal nexus between the first two elements — defendants' allegedly unlawful behavior

and the plaintiff's ascertainable loss." New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 13 (App. Div. 2003) (citing Cox v. Sears Roebuck & Co., 138 N.J. 2, 24 (1994)).  An "unlawful practice" may be an affirmative act, a knowing omission, or a regulatory violation. Parker v. Howmedica Osteonics Corp., No. 07-02400, 2008 WL 141628, at *2 (D.N.J. Jan. 14, 2008) (citing Cox, 138 N.J. at 18).

The CFA only applies to sales of real estate and sales of merchandise.  N.J. Stat. Ann. § 56:8-2.  The term "merchandise" is defined in the statute to "include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale."  N.J. Stat. Ann. § 56:8-1(c).  In this context, "the public" refers to "the public at large." Princeton Healthcare Sys. v. Netsmart New York, Inc., 422 N.J. Super. 467, 473 (App. Div. 2011) (citing Finderne Mgmt. Co. v. Barrett, 402 N.J. Super. 546, 570 (App. Div. 2008); Marascio v. Campanella, 298 N.J. Super. 491, 499 (App. Div. 1997)).  The Third Circuit concluded that "the entire thrust of the Consumer Fraud Act is pointed to products and services sold to consumers in the popular sense." J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259, 1272 (3d Cir.

1994) (citation omitted).  Additionally, the New Jersey Supreme
Court concluded that the term "merchandise" includes the sale of
consumer credit.  Lemelledo v. Benefit Mgmt. Corp., 150 N.J.
255, 265 (1997) (internal citations omitted); U.S. Land Res., LP
v. JDI Realty LLC, No. 08-5162, 2009 WL 2488316, at *19 (D.N.J.
Aug. 12, 2009).  However, while "the language of the CFA clearly
establishes that the CFA applies to certain types of credit, it
does not establish that it applies to all provisions of credit."
U.S. Land Res., 2009 WL 2488316, at *20.  Accordingly, CFA
applicability to a transaction requires a case-by-case analysis.
Papergraphics Int'l, Inc. v. Correa, 389 N.J. Super. 8, 13 (App.
Div. 2006).  In making the determination as to whether the CFA
applies to a transaction courts consider the position of the
parties in the transaction, the extent of the parties'
negotiations, and the nature of the merchandise at issue.

For example, in Princeton Healthcare Sys., 422 N.J. Super.
467 (App. Div. 2011), the parties negotiated a contract to
upgrade Princeton Healthcare System's (PHCS) computer system.
In order to assess its needs, PHCS hired a computer consultant
to prepare proposals for the project.  Id. at 469.  The parties
engaged in a two year process of proposal evaluations and PHCS

11

eventually entered into a contract with Netsmart, a computer software company.  Id. at 470.  After significant delays, PHSC sued Netsmart for breach of contract and violations of the CFA. Id.  The court found that the parties' contract could not provide a basis for a CFA claim.  Id. at 474.  The court focused on the fact the contract concerned a custom product and was the result of a two year negotiation involving a consultant.  Id. The court found that "[t]his kind of heavily negotiated contract between two sophisticated corporate entities does not constitute a 'sale of merchandise' within the intent of the CFA." Id.[2]

Similar to the facts of this case, Prof'l Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc., No. 05-2384, 2009 WL 1651131 (D.N.J. June 12, 2009) aff'd, 408 F. App'x 566 (3d Cir. 2010), concerned a commercial real estate financing transaction.  The court found that the CFA did not apply to the transaction because the parties were "experienced commercial entities with relatively equal bargaining power." Id. at *4.

_____

[2] See also Finderne Mgmt. Co. v. Barrett, 402 N.J. Super. 546 (App. Div. 2008) (employers' participation in tax avoidance program did not constitute a consumer transaction under the CFA; the program was not a single transaction and the employers were not "unsophisticated buyers"); Stockroom, Inc. v. Dydacomp Dev. Corp., 941 F. Supp. 2d 537 (D.N.J. 2013) (sophistication refers to the sophistication of the parties in the transaction at issue).

The court noted that the loan was not the type sold to the general public and contained unconventional financing features. Id. at *5.  Relevant to court's analysis was that the parties negotiated the loan commitment and Professional Cleaners was not a "first-time buyer" in real estate, "suffering a disparity of industry knowledge, victimized after being lured into this purchase[.]" Id.

Similarly, U.S. Land Res., LP v. JDI Realty LLC, No. 08-5162, 2009 WL 2488316 (D.N.J. Aug. 12, 2009), concerned the purchase of a commercial warehouse through a second mortgage and involved the transfer of a partnership interest as security. The court found that while the New Jersey Supreme Court has applied the CFA to offers of credit it should not apply to the transaction at issue because the parties engaged in "extensive negotiations unique to a particular property and craft[ed] a novel financing structure involving the transfer of partnership interests as security, [which] does not reflect 'the ordinary meaning of the consumer in the marketplace.'" Id. at *20 (citing J & R Ice Cream Corp., 31 F.3d at 1273); see also JPMorgan Chase Bank, N.A. v. Gaspar, No. A-4652-12T4, 2014 WL 6991728, at *3 (N.J. Super. Ct. App. Div. Dec. 12, 2014)

(affirming trial court determination that the CFA did not apply because condominium building mortgage was not part of a consumer transaction; property owner had numerous commercial investment properties and was a sophisticated property owner).

Plaintiffs argue Defendants' CFA counterclaim should be dismissed because: (1) the CFA does not apply to heavily negotiated commercial transactions; (2) it fails to state a claim because the purported losses are purely speculative; and (3) it fails to allege a causal link between CIBC's alleged conduct and Defendant's purported harm.

The Court will dismiss Defendants' CFA counterclaim because the parties' commercial transactions fall outside the purview of the CFA.  First, viewed in the light most favorable to the claimant, the parties appear to have equal bargaining power. William and Thomas Juliano are managing members of each of the counterclaimant entities.  Counterclaim ¶ 2.  William Juliano has been a commercial real estate developer in New Jersey and elsewhere for more than 40 years.  Counterclaim ¶ 3.  Defendants further elaborate that "[t]he projects and properties involved in this case are but a few of the Julianos diverse portfolio of commercial developments, which consists of retail space, hotels,

14

office buildings, and billboards." Counterclaim ¶ 9. CIBC is a Canadian chartered bank.  As such, the parties appear to be sophisticated corporate entities akin to those in Princeton Healthcare Sys. and Prof'l Cleaning.

Second, the pleadings show the parties underwent extensive negotiations to create a custom agreement.  The transaction at issue included over 700 pages of loan agreements negotiated over a four year period.  See Pls.' Br. at 13, n.12 (citing loan documents).  Further, Defendants' counterclaims illustrate that the Julianos were involved both personally, and through counsel, in extensive negotiations over agreement terms.  See, e.g., Counterclaim ¶¶ 43, 46, 63.  Defendants also note that "[t]he Juliano Parties bargained closely for the priority bidding rights embodied in the Loan Sale Agreement[.]"  Counterclaim ¶ 93.  Accordingly, as in US Land Reserves, invoking the CFA is inappropriate in this case because the "parties engage[d] in extensive negotiations unique to a particular property" and both personally, and through counsel, negotiated varying terms of the agreements.  U.S. Land Reserves, 2009 WL 2488316, at *20. Therefore, Defendants do not fall within "the ordinary meaning of the consumer in the marketplace." Id.

The cases cited by Defendants regarding the applicability of the CFA are distinguishable.  In Salamon v. Teleplus Enterprises, Inc., No. 05-2058, 2008 WL 2277094 (D.N.J. June 2, 2008), the court denied summary judgment on Teleplus's CFA counterclaim.  The court found there were questions of fact as to whether Salamon's services of finding non-traditional loans were unique and whether Teleplus was inexperienced and uninformed in the consumer transaction since Salamon provided no support for these propositions. Id. at *12.

Defendants argue that if Salamon's services were not unique then the extensions of credit and mortgage modifications at issue here are also subject to the CFA.  See Defs.' Opp. at 26. The Court disagrees.  Here, there are sufficient uncontested facts in the facts as pled to determine that the transactions at issue were not of the type offered to the public at large. Further, Defendants are sophisticated participants in these commercial loan transaction.

Additionally, Defendants cite Tuxedo Beach Club Corp. v. City Fed. Sav. Bank, 749 F. Supp. 635 (D.N.J. 1990), which permitted a CFA claim to proceed where the defendant allegedly breached its promise to fund a $13 million condominium building.

16

However, in that case the defendant only argued that the applicability of the CFA was limited by statute and on federal supremacy grounds.  Id. at 648.  Thus, the analysis in Tuxedo Beach is irrelevant to the issues before the Court.

### B.    Breach of Contract

"To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish three elements: (1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages."  Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc., 737 F.3d 879, 900 (3d Cir. 2013) (citing Coyle v. Englander's, 199 N.J. Super. 212 (App. Div. 1985)).  "The Supreme Court of New Jersey has instructed that '[w]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and we must enforce those terms as written.'"  Id. (citing Kutzin v. Pirnie, 591 A.2d 932, 936 (N.J. 1991)).  A plaintiff must identify the specific contract or provision that was allegedly breached.  See Skypala v. Mortgage Electronic Registration Systems, Inc., 655 F. Supp. 2d 451, 459 (D.N.J.

17

2009) (dismissing breach of contract claim because complaint did not identify provisions plaintiff asserted were breached).

In their counterclaim, Defendants allege that "CIBC materially breached the terms of the Loan Sale Agreement by, *inter alia*, declaring non-existent, non-monetary technical defaults before noticing the sale of the notes in order to deprive the Juliano Parties of their rights under the Loan Sale Agreement and by declaring the Loan Sale Agreement null and void." Counterclaim ¶ 120.

Plaintiffs argue Defendants' breach of contract counterclaim should be dismissed because Defendants failed to specify the contract provision at issue. However, Defendants identified the contract at issue, the Loan Sale Agreement. Further, while Defendants did not quote the exact language in the agreement they identified in their counterclaim the substance of the bidding rights provision and how Plaintiffs allegedly breached these terms. Counterclaim ¶¶ 92-93. This is sufficient information to put Plaintiffs on notice as to Defendants' breach of contract counterclaim.

Plaintiffs additionally argue Defendants' breach of contract counterclaim should be dismissed because: (1) the

issuance of the technical defaults did not prevent Defendants'
from bidding; (2) CIBC followed the express terms of the
agreement; (3) and Defendants did not allege that they met their
obligations under the loan agreement.

At this stage, Defendants need only put forth a plausible
claim for relief.  Defendants provided sufficient facts to
support their claim that CIBC breached the bidding rights
provision of the Loan Agreement by erroneously declaring
Defendants in default.  Defendants further allege that
Plaintiffs' actions dispossessed them of their priority bidding
rights and thwarted their ability to obtain financing from other
lenders to purchase their CIBC loans and invest in other
projects due to the default status of their loans.  Counterclaim
¶¶ 101, 105, 120.  Additionally, Defendants alleged that they
met their obligations under the loans and should not have been
declared to be in default.  Counterclaim ¶ 121.  Unsurprisingly,
Plaintiffs claim Defendants were in default, and therefore
Plaintiffs did not breach the priority bidding rights provision,
however, Plaintiffs raise only questions of fact not properly
resolved on a motion to dismiss.  Defendants need not prove
these allegations now, but only articulate a plausible claim for

19

relief above a speculative level.  Accordingly, Plaintiffs'
motion to dismiss Defendants' breach of contract counterclaim is
denied.

**C.   Breach of the Implied Covenant of Good Faith and Fair
       Dealing**

"An implied covenant of good faith and fair dealing is
present in all contracts governed by New Jersey law." Emerson
Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 169-70 (3d Cir.
2001) (citing Sons of Thunder, Inc. v. Borden, Inc., 148 N.J.
396, 420 (1997)).  Good faith means that "neither party shall do
anything which will have the effect of destroying or injuring
the right of the other party to receive the fruits of the
contract." Id. (citation omitted).  "Although the implied
covenant of good faith and fair dealing cannot override an
express term in a contract, a party's performance under a
contract may breach that implied covenant even though that
performance does not violate a pertinent express term." Wilson
v. Amerada Hess Corp., 168 N.J. 236, 244 (2001) (citation
omitted).  The party asserting breach of the implied covenant of
good faith and fair dealing must show "bad motive or intention"
and "must provide evidence sufficient to support a conclusion
that the party alleged to have acted in bad faith has engaged in

20

some conduct that denied the benefit of the bargain originally intended by the parties." Mollo v. Passaic Valley Sewerage Comm'rs, No. 07-1655, 2009 WL 5216976, at *17 (D.N.J. Dec. 30, 2009) aff'd, 406 F. App'x 664 (3d Cir. 2011) (citation omitted).

Defendants claim that Plaintiffs breached their duty of good faith and fair dealing by filing this lawsuit in retaliation and declaring nonexistent technical defaults. Counterclaim ¶ 125. Specifically, Defendants contend that by "declaring the Juliano Parties in default of their obligations under the Loans, and then commencing suit against them, CIBC effectively eviscerated their ability to obtain funding from a third party to enable them to bid for the Loans." Counterclaim ¶ 104.

Defendants alleged sufficient facts to pursue a counterclaim for breach of the implied covenant of good faith and fair dealing. Defendants allege Plaintiffs' letter declaring them in default was in error because they satisfied Plaintiffs' request for financial information and had not missed a payment. Counterclaim ¶ 78. Additionally, Defendants allege CIBC acted with "with utter disregard" of their rights. Counterclaim ¶ 126. Accepting Defendants' well-pleaded

21

counterclaims as true, Defendants sufficiently stated a cause of action under the implied covenant of good faith and fair dealing.  Accordingly, Plaintiffs' motion to dismiss Defendants' counterclaim for breach of the implied covenant of good faith and fair dealing will be denied.

**V.   CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to dismiss Defendants' counterclaims [Doc. No. 25] will be granted in part and denied in part.  Plaintiffs' motion to dismiss Defendants' Consumer Fraud Act counterclaim will be granted.  Plaintiffs' motion to dismiss Defendants' breach of contract and breach of the implied covenant of good faith and fair dealing counterclaims will be denied.


    s/ Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

Dated: September 29, 2015